IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF (1) blue Motorola smartphone with IMEI: 358289933756667, labeled item number 33 (2) black TCL smartphone, labeled item number 36 (3) black TCL smartphone, labeled item number 37 (4) black TCL smartphone, labeled item number 38 (5) black Samsung smartphone with IMEI: 356424984816092, labeled item number 39 (6) black Samsung smartphone with IMEI: 350239333522647, labeled item number 40, in the custody of the DEA Richmond office located at 111 Greencourt Road, Richmond, Virginia 23228 | Case No. 3:24-sw- 032 to 037 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Special Agent Matthew Taylor, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841(a)(1) and 846. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since May of 2005. I was trained as a DEA Special Agent at the DEA Academy in Quantico, Virginia. During my sixteen-week training, I received specialized training in the Controlled Substances Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit

1

Controlled Substance Violations. I received training related to criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute marijuana, cocaine, cocaine base, heroin, methamphetamine, and other dangerous drugs prohibited by law. I received training regarding the Fourth Amendment and search and seizure law. I was also trained in Confidential Source (CS) management and investigative techniques, and numerous other facets pertaining to the criminal investigation of illicit drugs.

2. I have received extensive training in the investigation and detection of controlled substance traffickers. I have conducted and assisted in investigations into the unlawful possession and possession with the intent to distribute controlled substances, and their associated conspiracies in violation of Title 21, United States Code, Sections 841(a) and 846. I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving the distribution and conspiracy to distribute controlled substances. I am aware that cocaine is a Schedule II Controlled Substance. I am familiar with the methods traffickers use to conduct their illegal activities to include communication methods, vehicles, text messaging, asset management, and narcotics transactions. I know that traffickers utilize communication devices, like smartphones and cellular telephones, to plan, control, and execute the illicit activities of a drug trafficking conspiracy in cooperation of other co-conspirators.

3. During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations and have gained knowledge and experience by working with other Detectives and Agents. I have participated in Federal and State search warrants involving the seizure of the aforementioned listed controlled substances, the seizure of records relating to the manufacturing and distribution of controlled substances, and other types of evidence documenting the activities of drug trafficking organizations (DTO) and their members. I have utilized numerous

investigative techniques and resources and draw on the experience, techniques, and resources I have gained in my employment as a Special Agent.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other sworn law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is: (1) **blue Motorola smartphone with IMEI: 358289933756667, labeled item number 33** (2) **black TCL smartphone, labeled item number 36** (3) **black TCL smartphone, labeled item number 37** (4) **black TCL smartphone, labeled item number 38** (5) **black Samsung smartphone with IMEI: 356424984816092, labeled item number 39** (6) **black Samsung smartphone with IMEI: 350239333522647, labeled item number 40 ("SUBJECT DEVICES"),** as described in Attachment A, seized from **Luis Xavier GIRON GONZALEZ ("GIRON")** on December 10, 2023, in Charlotte, North Carolina. The SUBJECT DEVICES are currently in the custody of the DEA Richmond District Office located at 111 Greencourt Road, Richmond, Virginia, 23228, in the Eastern District of Virginia.

6. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

7. Based on my training and experience, I use the following technical terms to convey the following meanings:

3

      a.      **Smartphone:** A portable personal computer with a mobile operating system having features useful for mobile or handheld use. Smartphones have become commonplace in modern society in developed nations. While the functionality of smartphones may vary somewhat from model to model, they typically possess most if not all of the following features and capabilities: 1) place and receive voice and video calls; 2) create, send and receive text messages; 3) voice-activated digital assistants (such as Siri, Google Assistant, Alexa, Cortana, or Bixby) designed to enhance the user experience; 4) event calendars; 5) contact lists; 6) media players; 7) video games; 8) GPS navigation; 9) digital camera and digital video camera; and 10) third-party software components commonly referred to as "apps." Smartphones can access the internet through cellular as well as Wi-Fi ("wireless fidelity") networks. They typically have a color display with a graphical user interface that covers most of the front surface of the phone and which usually functions as a touchscreen and sometimes additionally as a touch-enabled keyboard.

      b.      **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the internet must be assigned an IP address so that internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      c.      **Internet**: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections

4

between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8. Based on my training, experience, and research, I know that the SUBJECT DEVICES have capabilities that allow them to access the internet and serve as a smartphone.

## **PROBABLE CAUSE**

9. Based on my training and experience, what I have learned from other law enforcement officers, and the facts set forth in this affidavit, I submit that there is probable cause that the SUBJECT DEVICES contain evidence regarding violations of Title 21 U.S.C. §§ 841(a)(1) and 846, possession with the intent to distribute controlled substances, distribution of controlled substances, and conspiracy to possess with the intent to distribute and distribute controlled substances, committed by GIRON.

10. Starting in July 2022, the DEA Richmond Office, Chesterfield County Police Department, and other law enforcement entities, began an investigation into a Tri-Cities based cocaine trafficking conspiracy. As part of that investigation, through the use of confidential sources, judicially authorized T-III wiretaps, surveillance, and drug seizures, law enforcement identified multiple local cocaine distributors in the City of Petersburg, City of Hopewell, and surrounding jurisdictions. This investigation further identified several Mexican based sources of supply, who routed cocaine through border crossings to North Carolina and Virginia. In addition, this investigation determined that GIRON served as a Charlotte, North Carolina, based cocaine distributor, stash house operator, money collector, and transportation coordinator for the Mexican sources of supply.

11. In 2023, multiple Virginia based targets involved in the Tri-Cities cocaine trafficking conspiracy were indicted, arrested, and plead guilty to federal drug trafficking charges.

5

Prior to and following their guilty pleas, several of these defendants cooperated with the United States and provided reliable and corroborated information pertaining to their involvement in the conspiracy, along with the involvement of other co-conspirators, to include GIRON.

12. In July 2023, during a proffer interview of COOPERATING DEFENDANT 1 ("CD1"), CD1 stated there was a drug trafficking associate, known to CD1 as "La Rana," or, "Rana," who lived in Charlotte, North Carolina. From 2022-2023, CD1 stated he/she made several trips to Charlotte, North Carolina, during which CD1 picked up multiple kilograms of cocaine from "Rana" per trip. Through the course of this investigation, and based initially on CD1's cooperation, "La Rana," aka: "Rana," was positively identified as Luis Xavier GIRON GONZALEZ ("GIRON"), born October XX, 19XX.

13. On August 14, 2023, during judicially authorized Title III wire and electronic interceptions of telephone number 804-605-7000, used by Cooperating Defendant #2 ("CD2"), a known local Tri-Cities based drug trafficker, a suspected Mexican source of supply using Mexican telephone number 921-203-1040 sent the following text message, "2132202840rana." A second text from the Mexican number, immediately following the above text stated, "The boy num. Bruh." Based on cooperation from multiple cooperating defendants, your affiant determined that the above Mexican telephone number was used by Co-Conspirator #1, a Mexico based cocaine source of supply and a suspected drug trafficking associate of GIRON. In a debrief following his arrest, CD2 stated that Co-Conspirator #1 passed GIRON's telephone number (i.e. 213-220-2840) to CD2 so that CD2 and GIRON could arrange for the pickup of cocaine.

14. Based on additional wiretap intercepts, on August 20, 2023, DEA surveilled CD2 travel to Charlotte, North Carolina, and meet with GIRON. Later that night, law enforcement seized cocaine from Co-Conspirator #2, a known drug courier for CD2, while Co-Conspirator #2

6

was driving from Charlotte, North Carolina back to the Eastern District of Virginia. In a later debrief, CD2 admitted he picked up approximately 20 kilograms of cocaine from GIRON in Charlotte, North Carolina, on the night of August 20, 2023, and provided it to Co-Conspirator #2.

15. On November 15, 2023, the DEA Charlotte District Office initiated a North Carolina State Title III investigation of telephone 213-265-1904. As a result of intercepted conversations from this wiretap between GIRON and other co-conspirators in Charlotte, North Carolina, on December 10, 2023, law enforcement officers seized approximately sixty-three kilograms of suspected cocaine, approximately $791,194.00 in U.S. currency, and arrested four co-conspirators, GIRON being one of them. Additionally, during the execution of a North Carolina state search warrant at GIRON's residence, which also named a black 2017 Dodge Durango with North Carolina license JKH-8858 registered to GIRION as subject to the search warrant, law enforcement recovered the SUBJECT DEVICES in the center console of the Durango. The Durango was parked outside GIRON's residence located at 2002 Summey Avenue, Charlotte, North Carolina. A law enforcement database query revealed the Dodge Durango vehicle was registered to Luis Xavier GONZALEZ, born XX-23-19XX, with North Carolina driver's license 34181XXX, GIRON's driver's license. The SUBJECT DEVICES were seized by Charlotte Mecklenburg Police Department and placed into their evidence for safe keeping.

16. In January 2024, during a proffer interview of CD1, CD1 was shown the North Carolina driver's license photo of GIRON and a picture of GIRON from December 10, 2023, after his arrest. CD1 identified these pictures of GIRON as the person CD1 knew as "La Rana" or "Rana." CD1 stated GIRON was listed in CD1's telephone contacts as, "Primo." CD1 stated there were multiple "Primos" in CD1's phone because GIRON would use multiple phone numbers. A search of CD1's phone revealed three numbers related to "Primo." Two of these numbers (980-

939-3762, 704-516-7169) have area codes in or around Charlotte, North Carolina. One of these numbers (689-248-0621) has an area code in Orlando, Florida.

17. In February 2024, during a proffer interview of COOPERATING DEFENDANT 3 ("CD3"), CD3 was shown a picture of GIRON. CD3 identified the picture of GIRON as the person CD3 knew as "Rana." CD3 recounted the first time CD3 went to Charlotte, North Carolina, to meet with GIRON in furtherance of the cocaine trafficking conspiracy. In and around May 2023, CD3 stated he/she met GIRON at or near 10621 Bryton Corporate Center Drive, Huntersville, North Carolina. CD3 then followed GIRON to a nearby apartment complex. CD3 stated GIRON was driving a black Dodge Durango. During this meeting, CD3 stated he/she passed approximately $85,000.00 U.S. currency to GIRON. CD3 stated this money was payment for cocaine that was fronted to CD3 by Co-Conspirator #1.

18. In February 2024, during a proffer interview of COOPERATING DEFENDANT 4 ("CD4"), CD4 recounted the first time CD4 went to Charlotte, North Carolina, in furtherance of the drug trafficking conspiracy. In the summer of 2022, CD4 stated he/she went with another co-conspirator and met with GIRON at an apartment complex. CD4 stated GIRON was alone and driving a black Dodge Durango. During this meeting, CD4 stated he/she picked up 15 kilograms of cocaine from GIRON. A search of North Carolina Motor Vehicles information regarding the known black Dodge Durango registered to GIRON showed an issue date of April 25, 2022. Based on this information and the information provided in the paragraph above, your affiant believes the black 2017 Dodge Durango from which the SUBJECT DEVICES were taken is the same vehicle used by GIRON in furtherance of the drug conspiracy related to the Eastern District of Virginia.

19. Based on the events leading up to GIRON's arrest and the statements made by multiple cooperating defendants, and based on my knowledge, training, and experience, your

affiant believes GIRON was an illegal drug trafficker operating out of Charlotte, North Carolina. Your affiant further believes GIRON was working with known drug traffickers in the Eastern District of Virginia, specifically at least CD1-CD4, to supply large quantities of cocaine to the Eastern District of Virginia. Your affiant believes GIRON was also in contact with Mexico based sources of cocaine who directed GIRON to supply cocaine to drug traffickers in the Eastern District of Virginia. Your affiant believes these drug trafficking conspirators were exchanging information related to where to deliver the drug loads and with whom to meet to make delivery of these drugs. Based on my training and experience, your affiant also knows drug traffickers typically utilize and possess multiple cellphones and cellphone numbers, and likewise keep possession of these cellphones after they stop using them, to avoid detection by law enforcement. Therefore, your affiant believes GIRON used the SUBJECT DEVICES to communicate with his co-conspirators to prevent detection by law enforcement.

20. Based on the recent debriefs and identification of GIRON as a drug trafficker who was involved in a conspiracy to distribute and possess with the intent to distribute controlled substances in the Eastern District of Virginia, DEA Richmond Office Special Agents requested possession of the SUBJECT DEVICES from the DEA Charlotte Office. On February 23, 2024, DEA Richmond Special Agents took possession and custody of the SUBJECT DEVICES, which are now stored at the DEA Richmond Office located 111 Greencourt Road, Richmond, Virginia, 23228.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

9

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire media, that might expose many parts of the SUBJECT DEVICES to human inspection in order to determine whether they are evidence described by the warrant.

  24. *Manner of execution.* Because this warrant seeks only permission to examine the SUBJECT DEVICES that are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Matthew Taylor
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on the 27th day of February 2024.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE
Summer L. Speight

## ATTACHMENT A

1. The property to be searched are: (1) **blue Motorola smartphone with IMEI: 358289933756667, labeled item number 33** (2) **black TCL smartphone, labeled item number 36** (3) **black TCL smartphone, labeled item number 37** (4) **black TCL smartphone, labeled item number 38** (5) **black Samsung smartphone with IMEI: 356424984816092, labeled item number 39** (6) **black Samsung smartphone with IMEI: 350239333522647, labeled item number 40** seized from Luis Xavier GIRON GONZALEZ ("GIRON"), on December 10, 2023. The SUBJECT DEVICES are in the custody of the DEA Richmond District Office in the Eastern District of Virginia located at 111 Greencourt Road, Richmond, Virginia, 23228.

2. This warrant authorizes the forensic examination of the SUBJECT DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1. All records on the SUBJECT DEVICES described in Attachment A that relate to violations of Title 21 U.S.C. §§ 841(a)(1) and 846 relating to the possession with the intent to distribute controlled substances, distribution of controlled substances, and conspiracy to possess with the intent to distribute and distribute controlled substances including:

   a. SUBJECT DEVICE user accounts/basic demographic information;

   b. Contact lists, call records, call history;

   c. Social media contents contained within SUBJECT DEVICES;

   d. Any information related to the purchase, possession, or trafficking of narcotics;

   e. Photographs/videos/documentation;

   f. Text messages, emails, voicemail messages, multimedia messages;

   g. Web brower history;

   h. Balance sheets, drug ledgers, financial information related to drug proceeeds;

   i. Location information, to include cell Tower data within the SUBJECT DEVICES;

2. Contextual information necessary to understand the evidence described in this attachment.

3. Evidence of user attribution showing who used or owned the SUBJECT DEVICES at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.